Good morning and may it please the Court, I'm Eric Christensen for Petitioner Alco Renewables, Inc. I would like to reserve four minutes for rebuttal. Anybody? How many? Four? Four, thank you. This case involves PRRPA, which was intended to overcome the utility monopoly control retail markets by allowing small renewable generators access to those markets. The lower course decision in this case threatens to substitute an endless litigation labyrinth that stifles renewable energy development just as effectively as the wall of the utility monopoly. That's demonstrated perfectly by Alco in this case. They should have, in March 2011, they had a legally enforceable obligation under the terms of PRRPA that should have allowed them to sell output from their renewable generators at a long-term avoided cost rate. More than six years later, we're still waiting for the avoided cost rate to be defined. The issue, I think, before is whether they have a private cause of action. Yes, Your Honor, I think the private cause of action is manifest, first of all, in the plain language of Section 210H1, which says that if the issue involves a matter that's within FERC's jurisdiction under Section 2 of the Power Act, and that's clearly the case here because this involves a wholesale sale from Alco, then the matter is enforceable in the same manner as a rule under the Federal Power Act. And it's absolutely clear that there is a private right of action to enforce rules under the Federal Power Act. For example, Narragansett Electric Company versus Constellation Energy, the District of Rhode Island case from 2011, 526F2, 260 says, it is well established that district courts and FERC share concurrent jurisdictions over cases interpreting contracts. We certainly have a contract here that involves the avoided cost rate. It also says FERC, the Federal Power Act, authorizes district courts to enforce FERC orders. There's a FERC order here in the form of the avoided cost regulations that we're trying to enforce against National Grid. So under either prong of that, there's clearly a private right of action under the Federal Power Act. Yes? Is there an express enforcement provision delegated to the federal government in this legislation? Yes. 210H1 delegates to the commission as the authority to enforce its own orders, but also because the way that it's phrased as the 210H1 says that these orders are enforced in the same manner as if it was an order under the Federal Power Act. What has the Supreme Court in Sandoval and similar cases said about that? So the Supreme Court, there's all manner of cases in which private actors brought private causes of action under, for example, the supremacy clause challenging the state-level actions that interfere with FERC's jurisdiction. There's plenty of examples of private causes of action where the court has concluded that there is a private cause of action. So, for example, going all the way back to the City of Cleveland case, a Sixth Circuit case from 1977, 570F2123, it says that, same as the Narragansett case, that if you have a contract that has a federally defined term, in that case a term that the FERC had said was just and reasonable, that can be enforced by a private party under the concurrent jurisdiction of the district court. Similarly, under the parallel provisions of the Natural Gas Act, there's a number of cases that say that there's a private right of action to enforce FERC orders. For example, two Panhandle Eastern cases, one from the Eastern District of Michigan, 937F641, one from the District of Delaware, 928F466. Both of those say, under the parallel language of the Natural Gas Act, that's parallel to the Federal Power Act language, that the private actor has the right to enforce a FERC order against someone that's violated that order. That's exactly what we're trying to do. You say someone that's violated, you mean another party? Yes. Another private party? Yes. As opposed to a state agency? Yes. So, in those cases, it was Panhandle Eastern Pipeline Company was enforcing a FERC order against, in one case, Michigan Consolidated Gas Company. In the other case, it was the local private distribution company in Delaware, whose name I forgot. Let me just back up for a second. There's something called an as-applied action that can be brought in state court. Yes. Correct? Could you bring that now? Yes, we could. Unfortunately, it looks like it would be ineffective, but because the NBPU's order in this case says, even if we assume, so this is the order that was issued against ALCO in July of 2014. It's in the appendix of the National Grid brief at 13. It says, even if we assume without finding that National Grid has not acted reasonably, any further investigation would be futile because the department cannot grant the relief requested by ALCO's petition. So, there is a state action, both before the NBPU and before the state court, but for whatever reason, NBPU has concluded that they couldn't do anything for us here. Was that appealable? Pardon me? Was that appealable? It was appealed. Yes, we appealed that. The appeal in the state court was dismissed in favor when the district court here concluded that the DPU's regulation for avoidant costs didn't comply with PURPA. The state court vacated the order in favor of the district court here. I'm not following. Now that you have a federal district court ruling saying that the NBPU rule was wrong, could you bring an as-applied state enforcement action? So, the problem with the as-applied state enforcement action is that, right now, there's no avoidant cost rate that's been defined by the state agency. That's what I don't understand about your lawsuit. How can it be that we could read the federal statute to, on the one hand, require there to be a rate in place in order for you to bring the as-applied challenge in state court, but to allow you to not worry about that and bring enforcement action in federal court when there's no rate in place? I just don't get that. I think you're assuming that NBPU would have to go through a full rate-making or administrative proceeding. It's not the case under PURPA. PURPA allows for the state agency to do as little as simply act as a dispute resolution panel. In this case, that's not what's happening. If I understand correctly, aren't they in the process of setting a rate, which you can then go to state court to enforce? Well, we're waiting. So, it's been a year since the district court action. There's still no affirmative action from the DPU to set the avoidant cost rate. All they've done is start a debate proceeding. There's been no affirmative action. But in the absence of there being a rate, how can you be suing National Grid for not having complied with it? Because they're in violation of the federal regulation that says they have to pay a long-term avoidant cost rate. No, no, no.  In order to enforce against a private party in the state court action as applied, in other words, they then have an obligation. The predicate for that is that there's a rate that they have to comply with. But you just said they can't do that in state court because there's no rate in place. If there's no rate in place, how can you be able to then enforce against them in federal court? I just don't understand that. Because, I mean, it's basically a contract action that says what should be the avoidant cost rate here. Well, then how come you can't bring that in state court? So the state, we could bring that in the state court, but we have the option to bring it in the federal court as well. So you can, but what could you bring in state court right now? So that's a problem because in the state court right now, we could bring a contract action, but we're sort of in the same impasse waiting for the DPU to do something. But as long as that's true, how does it help? How can you do anything in federal court? Either the statute contemplates there being a rate in place or it doesn't. If it does contemplate there being a rate in place, I don't see how the other party has done anything that you can sue them for because there's no rate that they're not complying with. And so what all we're asking for is an effective remedy for the absence of a proper avoidant cost rate. Does that mean that it's dependent on the district court establishing the rate? So the district court could establish the rate in any number of ways, but I mean it's a... So if you lose on that, which is part of your appeal here, how could you win? In other words, if our holding is district court didn't do anything wrong in saying that it wasn't in a position to establish a rate, didn't have to get a special master, didn't have to direct it to FERC, so that we're just in limbo and leave it to the state to set the rate. Imagine that you lose on that part and that's the state of the world. How can you win on your private cause of action? Because the district court would still have jurisdiction over this contract, which involves a federal question. But there's nothing that's been violated. That's why you keep saying you can't bring the accident state court to fault? Well, I think the premise is incorrect, Your Honor. So what's wrong? Where is it wrong? The violation is that there's no long-term avoidant cost rate. That was established by the lower court and nobody's challenging that. But there's no rule they've set that the national grid has to comply with, correct? And so even assuming that the district court couldn't develop an avoidant cost rate for this one-off, this particular contract, which was supposed to be an avoidant cost rate back in 2011, so there's no entrenchment on the DPU's authority to establish a long-term, forward-looking avoidant cost rate that we're asking for. It's simply asking for the district court to develop an effective remedy, which is what should have been the long-term avoidant cost rate at the time this contract was entered into. And that can be done, as I said, with as little as the DPU simply providing dispute resolution services, for example. But it doesn't require a full-out entrenchment. Can you bring that action in state court? Pardon me? Can't you bring that request for relief in state court? It's already been brought in state court. For the past? I think we want to bring it in federal court right now, which you just described. Yes. I want the damages for the failure to have entered into this contract during that period of time. I'm not talking about what the rate going forward is. I know you haven't said it. Right. Could you bring that action in state court right now? I think we could bring it either in state or federal court, Your Honor, is the short answer. If you can bring it in state court. The thing that we cited makes absolutely clear that Congress did not intend for the state-level causes of action to impliedly defeat any federal-level causes of action. Your time is up, but let me just tell you that I haven't heard any arguments on the question that I asked about whether you have a private cause of action. You can use your time later on as you feel, but I want you to know that. Good morning, Your Honors. May it please the Court. My name is Michael Kunselman, and I represent Hathaway, Massachusetts Electric Company, which does business under the name of National Grid. Your Honors, I think as you recognize that the primary issue in this case is quite simple. Is there a private federal cause of action available to ALCO directly against National Grid to enforce the requirements under Section 210 of PRPA? What is MDPU doing to establish the rate? Right now MDPU is in the process of revising its regulations to comply with the district court order, which found that those regulations were not consistent with first rules implemented in PRPA under the federal contract. So what does in the process mean? So this has been going on a year. What has happened within that year to revise? My understanding, Your Honor, is that the DPU has issued an initial notice of rulemaking and has already begun soliciting comments from various parties, and I think there has been at least one, maybe two rounds of comments already filed in that proceeding. So they're just following their normal administrative practices then? That's correct, Your Honor. That's correct. What do you say to the argument that I take it they're making is whatever the rate through those processes that they may establish. There was a period of time in which MDPU was acting unlawfully because it had a mistaken understanding of what the rate should be. And as I understand it, they're saying there's got to be some mechanism, maybe they're wrong about this, there's got to be some mechanism under this scheme where when a state is acting unlawfully and establishing the rate, once that's found out and it's become clear that they were, there should be some mechanism for recompense for that past time in which there was an erroneous view of the rate in the state's regulatory system. What do you say to that? Well, Your Honor, I think it's clear that there is no such remedy available under PURPA, which is the act under which they are pursuing this action. So whether or not there might be some remedy at contract and state court or whatnot, I can't comment upon, but it is clear that under PURPA no such remedy exists, and it is clear under the Federal Power Act that no such remedy exists. And again, that is a gravamen of their action here. And could you just spin out what the logic of the scheme for me would be in which it would make sense to conclude that there is no such remedy? I think, Your Honor, the logic of that is that when Congress set up PURPA, it imagined a divide between the federal and states. It imagined that the states, well, the federal government, and PURPA in particular, would take sort of the larger, more sort of summary role in setting out general priorities under the act, that it would be the states that have the primary duty to implement the act, in particular making determinations as to avoid costs. And those are general regulatory determinations that every sort of state agency makes in the course of regulating utilities. And the notion that a state should be somehow, or particularly a private utility, would be subject to damages because a state failed to comply with federal law, Your Honor, I'm not sure of any case anywhere that has ever found such principle, and I would suggest that such a principle is fundamentally illogical and unfair, that the utility would be responsible somehow for damages because the state regulations were unlawful. The utility doesn't set the regulations. The state does. Did the utility take a legal position in district court as to the correct or incorrectness of the state's position? The utility did support the state's position in district court, Your Honor, but I don't think that position should be held against the utility in terms of finding that there exists a private cause of action to pursue damages because of the state's regulations. Your position is that there's not a federal cause of action. That's correct, Your Honor. You're not taking a position as to whether there's a private remedy in state court? No, Your Honor. In fact, to the contrary, Section 210G of purpose specifically provides that state remedy to ALCO. It provides that any entity, including ALCO, can seek to enforce a utility's obligation to purchase the full output of a qualifying facility at the utility's avoided costs. But do you agree that if that action was brought right now, that as applied action, they would lose because there's no rate in place? Well, I agree, Your Honor, that there would be really no basis for bringing that action because, as you said, there is currently no rate in place. And that action, you also agree, is written in a way in which you couldn't frame it as I'm not trying to enforce the rate not yet in place because that would be crazy. I'm instead trying to get damages for the wrong rate that was in place. That provision, do you think, isn't available for that purpose? That's correct, Your Honor. It's certainly not specified anywhere. So in your reading of the scheme, it just contemplates if the agency is wrong in setting the rule for a long period of time, the tough luck, that's water over the bridge, and all the scheme is trying to do is make sure that ultimately the right rate gets in place. And once it's in place, then there's an obligation of people subject to the rate to make available at that rate the power. I think that's an excellent summary, Your Honor. And I would just add that if ALCO really feels that it needs some action for damages of the sort that we've been discussing here, then the remedy is not to rewrite the statute to find an additional private cause of action that is clearly not specified therein, but rather the recourse is to Congress to amend the statute. It's Congress's duty to lay out what the statute says. It is not this Court's duty to find new private rights of action just because ALCO wants a remedy that the statute doesn't contemplate. I take it there's no Section 1983 claim or anything like that that could be brought against the state officials or nothing like that either, Your Honor? Your Honor, I can't imagine standing here, but I haven't investigated that personally. But even if there was a Section 1983 claim, but you wouldn't bring it against National Grid, you'd have to bring it against the state agency. I think that's absolutely right, Your Honor. Again, FERPA is clear that it is the state's obligation and authority to implement FERC's rules there, Your Honor, I guess the other thing I'll just mention going along is, I think all this discussion kind of leads us to kind of a strange conflict here, where ALCO has asserted that essentially it has no remedy for its claim. But really, ALCO's claim at its crux is a claim about the rate. It doesn't like the avoided cost rate. When ALCO went to National Grid in 2011, National Grid didn't refuse the contract with ALCO. National Grid explicitly agreed to contract with ALCO at the avoided cost rate established by the state. So therefore, when ALCO pursued that action in district court and ultimately won on that action, it obtained its relief for that claim. There is no claim against National Grid here. Did their complaint seek damages for the interim period of time in which the MPDU had the wrong rate? Their action did imply a damages claim. It was not entirely clear what they were seeking damages for. Did National Grid pay them pursuant to the contract the wrong rate, or has there been no payment? No, there was no contract. Because when ALCO approached National Grid, again, National Grid agreed to contract with ALCO at the avoided cost rate then in effect. ALCO, however, declined because ALCO wanted a different rate. Essentially, what ALCO was asking National Grid to do was to violate the then in effect Massachusetts DPU regulations to contract at a rate of ALCO's preference, not the rate that was then in force. That wouldn't have been actually illegal, would it? Grid does have the ability, as all utilities do under purported contract, at negotiated rates. However, Your Honor, I would mention that, of course, utilities such as Grid are subject to prudence review in state court. So if a utility does choose to contract at a rate higher than the then in force purple rate as implemented by the state, then that utility may in fact be subject to a prudence challenge by an entity in a state forum saying, essentially, hey, this is a rate you paid too much. Why did you do that? So there are certainly incentives for Grid to want to follow those regulations as they are written. Your Honor, I think it is also fairly clear under Section 210H1, excuse me, ALCO is claiming under Section 210H1 that for purposes of enforcing FERC rules under PURPA, that all FERC rules relating to the rates for QS, such as ALCO, are properly enforced under FPA mechanisms as opposed to state court mechanisms. However, this is belied by FERC's regulations on point, which specifically state that for QS, 20 megawatts is smaller. Those facilities are exempt from FERC rate regulation under the Federal Power Act. ALCO makes an odd claim that the words exempt from review mean a, quote, deferential standard of review. This, I think, is just inconsistent with the plain English meanings of those words. But moreover, FERC itself clarified when it issued its order most recently amending those regulations that it intended for those units, those 20 megawatts and smaller units, which include ALCO's units, to remain exempt under Sections F205 and 206 of the Federal Power Act. I'm not sure if this matters, but there's this carve out for 0 to 20 producers, but the exemption is for 0 to 30? It's a little bit convoluted, Your Honor. Essentially, there is a 0 to 20 exemption for it under all portions of the Federal Power Act. However, for certain units between 20 and 30, the exemption does not apply to Sections 205 and 206. So for those units, excuse me, FERC still has the jurisdiction to review the rates of those units, although they remain exempt from other portions of the Federal Power Act. However, for units 20 megawatts and smaller, those units are exempt from all portions of the Federal Power Act, including the portions involving FERC's ability to review the justice and reasonableness of the sales of those units. And that's another thing I'd like to point out. Before you do that, in consequence, do you think the words from scrutiny could just be deleted and it would be identical? Excuse me? The words from scrutiny that appear in that, you could just delete them. They're just superfluous? Well, I don't know about superfluous, Your Honor, but I think they add a lot more clarity to the situation. And I think, again, FERC may have their words. If you dropped them, what would be unclear? I'm not sure it would necessarily be unclear. They seem to me to add no clarity and just to confuse things. Well, Your Honor, I think that's a fair reading of the regulation. Has ALCO provided energy to the grid? No, Your Honor. There was never any contract entered into. I know there was never a contract. I'm trying to figure out if they provided any actual energy to the grid. Your Honor, I am not aware of any. And I believe the answer to that question is no. Frankly, Your Honor, I'm not sure if the projects that issue that ALCO wanted to sell the output of the grid were even ever developed. I think ALCO could speak better to that. But given that there is no structure in place for National Grid to purchase the output of those units, it would seem odd that a company would agree to simply provide that energy gratis or at a rate to be determined later. So all of this is about a proposal to sell energy that has just been delayed but which is moving forward now. Correct. That the federal court has indicated what the correct rate structure should be. That's right. And, Your Honor, I think it's also important to note that while ALCO did approach grid in 2011, it did not bring in action, excuse me, it did not bring until 2014 in action in front of FERC to enforce its claim that the state's regulations had improperly implemented FERC's rules on their purpose. Thank you. Thank you, Your Honor. I'm sorry, we're supposed to hear from Mr. Casey. Yes, Mr. Casey has three minutes. I'm a little excited there, sorry about that. Good morning, Your Honors, and may it please the court. Tim Casey on behalf of the Massachusetts DPU. The district court's decision in this case represented an appropriate recognition of that court's limited authority under Section 210H2 of PURPA. It may direct DPU to implement FERC's rules under PURPA, but that is essentially the extent of the authority of the district court with respect to the DPU, and that's exactly what the district court did in this case. It found that DPU's regulations were inconsistent with FERC's rules insofar as they failed to give qualifying facilities like ALCO the option of entering into long-term contracts at a price when the contractual obligation is incurred rather than when the energy is actually delivered. So it directed DPU to correct that deficiency in its regulations. The DPU is addressing that deficiency in its regulations. Shortly after the district court's decision, it issued, which is in the addendum to our brief, a notice of rulemaking in direct response to the district court's decision, where it said it intended to address this issue. It solicited comments and reply comments. And just to update the court on the status of that rulemaking, the DPU expects to issue a proposed rule on this issue sometime in 2017, in the last quarter of 2017. It will solicit additional comments from interested parties and stakeholders, and it will issue a final rule most likely in 2018. At that point, well, as Mr. Kosselman said, ALCO is not without recourse. It could have all along attempted to negotiate a contract with National Grid or another utility. Part of the reason it initiated this lawsuit in the first place is because it was insisting upon a 20-year contract with National Grid based on what some might say was a very favorable rate to ALCO based on an entirely separate proceeding at DPU. It's just something strange that seems to occur. So when MPDU had the wrong rate, it would have been possible for a company like ALCO to strike a deal, though they'd have to be striking a deal at terms that they thought, turns out correctly, were disadvantageous to them vis-à-vis what federal law actually required the rate to be. Now if they succeed in demonstrating that that MPDU rate was wrong, what's supposed to happen in the, as you describe it, at least two-year interim in which there's no rate in place? Those companies are just unable to make deals? No, they are able to make deals, Your Honor, and I'd like to point the court, if I could, to a DPU regulation which remains in place. It's 220 Code of Mass Regulations 8.03 sub-paragraph 1B2, which does allow qualifying facilities to negotiate contracts with National Grid. So if I may finish, Your Honors. They could have all along still sought to negotiate a contract with... And what's the obligation of National Grid under that rule in the negotiating process? Well, they... Most National Grid says, well, I'm going to insist in those negotiations that you pay me at the rate that's now invalid. Right. So they, as you may recall, during this negotiation, they said, well, we'll offer you the rate that's in our DPU approved tariff, and since you're proposing a much higher rate, we reject the rate that you're proposing. So while they could negotiate, they... There's no... It is an unusual situation where there's no DPU mandated avoid... It just sort of seems to gut the scheme for a significant period of time. If the whole idea Congress wanted was to make sure that deals could be struck, whenever the state gets it wrong, you then throw yourself into this blackout period where it doesn't seem like any deals could be struck. It's hard to believe Congress would have wanted that. I don't know that the solution is what they're proposing, but that does seem like an odd feature of the statute. Well, Your Honor, what I would say is that if it's odd, it is a reflection of Congress's and FERC's desire and interest in having state regulatory agencies be the primary forum subject to state court review for implementing FERC. And so they were free to, again, such as it was, to try to negotiate a new contract with National Grid. They could have initiated a new or requested a new enforcement action before DPU, and if they were aggrieved by that decision, they could have sought further state court review. So they were not without options. Thank you. Thank you, Your Honors. I think that's it. Oh, I'm sorry. Just a few minutes, Your Honor. I apologize. That's okay. So I think from MDPU's presentation, it sort of underlines the basic problem with this case, which is perpetual delay in getting to effective remedy for what should be a long-term avoided cost rate in a contract that was established in 2011. Apparently, we're not even going to have that until at least 2018, possibly subject to considerably more mitigation. And so we suggest that the remedy should be for the district court to retain jurisdiction over the contract, define the avoided cost rate that should have been in place in 2011, allow the DPU to go forward however it wants to for forward-looking contracts, but develop a remedy for this contract. That's the only way to effectuate the scheme that Congress had in mind here, which was a contract-based scheme where when the QF comes forward with a contract, that becomes a legally enforceable obligation. What would your remedy be? Pardon me? What would your remedy be? What would be your measure of damages? The measure of damages would be to establish an avoided cost rate, which could be done by expert testimony, for example. And it's, you know, no more complicated than, for example. But assuming the court established an avoided cost rate. Yes. I mean, this isn't a situation where you've been providing energy. I'm trying to figure out how that would look. Well, we shouldn't have been providing energy starting in 2011. Yeah, but you are. It's a damages question. I mean, this court doesn't have to deal with that. Some court would have to establish a rate. Yes. Well, the court wouldn't have to establish a rate. It would have to determine what the rate should have been, possibly with the participation of any of you. The court would have to get into the rate-making business. Well, it's not really rate-making in the traditional sense. It's just simply a legal test that says what is the cost that the utility would have paid if it didn't buy from this QF. But the only cost that they should have paid would be whatever MPDU could legally have imposed and would have chosen to impose. So under federal law, it's supposed to be the highest avoided cost rate. So the MPDU doesn't have the… No, no, no. That's just saying highest avoided cost rate. Is there no possible discretion as to what that number could be? There's no range in which that could fall? There's certainly discretion. So just please listen. Okay. Okay. So there's a range. Anywhere within that range is a permissible rate for MPDU to have adopted. Correct. Correct. So what you'd have to be asking the court to do is guess where within that range MPDU would have adopted it? No, we'd ask MDPU. I mean, the court could ask MDPU to come in and act in its capacity as a dispute resolution service, for example. But they could certainly ask the DPU for… But you'd be trying to figure out, since no energy was given, you'd be trying to figure out what your lost opportunity cost, what your lost opportunity was, right? Yes. And that would be a lost opportunity under a rate that never was established and about which there would be some discretion for MPDU to choose what it would have been. And… So the evidence would be what would have MPDU decided that rate would have been had it known it had the discretion to establish it? And then how costly to you would it have been that you didn't have a chance to strike a deal at that rate? That would be the idea? And if that was the idea, would the Doctrine of Primary Jurisdiction fall exactly in place? Yes, Your Honor. I mean, the Doctrine of Primary Jurisdiction is not mandatory. But, I mean, I think the court could say, we have this contract, undefined term. DPU, you have a specific amount of time to define what the missing term was. As it was, it just said, we're refusing to establish a specific deadline. And now we're stuck with at least two more years of delay. I'm sorry, did I interrupt? No, Your Honor, I appreciate the interruption. Thank you. Not many people do.  Thank you, Your Honor.